# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ANTHONY BOWMAN, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:11-cv-1046-ALB |
| RELIANCE STANDARD LIFE INSURANCE CO., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff Anthony Bowman's Initial Submission in Support of Judgment. (Doc. 13). Upon consideration, the court holds that Defendant Reliance Standard Life Insurance Company ("Reliance") is entitled to judgment in its favor and against Bowman.

## BACKGROUND

Plaintiff Anthony Bowman has worked hard all his life, and he has the scars to prove it. Injuries have required Bowman to undergo multiple surgeries and endure chronic back and neck pain resulting in some level of disability. Bowman also complains that between his sleep disorder and pain medication, he lacks the ability to concentrate and perform even sedentary tasks requiring concentration.

Because of his injuries, Bowman sought disability benefits from Defendant Reliance Standard Life Insurance Company. Reliance initially granted Bowman's

disability application because he was unable to do his previous job as a Maintenance Mechanic, which required heavy exertion such as lifting 50–60 pounds. (Doc. 12-3 at 23; Doc. 12-5 at 100). Shortly after Reliance granted Bowman's claim, the Social Security Administration approved Bowman's claim for disability. (Doc. 12-4 at 42). As required by the policy, Reliance checked back in after two years to decide if long-term disability was warranted. (*Id.* at 90–91). Total disability after the initial two years requires that the claimant be unable to do any job, not just his previous one. (Doc. 12-1 at 11).

Reliance sent Bowman a questionnaire, which he completed and returned. (Doc. 12-4 at 389–92). Reliance then contacted his three doctors: Dr. Cordover, Dr. Connolly, and Dr. DeBerry. In answer to a questionnaire, Dr. Cordover, a back specialist, noted he had examined Bowman and determined that he could "perform[] full time work" with some limitations. (Doc. 12-5 at 66). Specifically, Dr. Cordover was worried about "repetitive bending, squatting, stooping, etc.," so he restricted Bowman to light lifting for six months, followed by medium lifting. (*Id.* at 66, 69). The questionnaire also asked the doctor to describe the effect of Bowman's medications as causing one of the following: (1) no significant effect, (2) some limitations, (3) severe and limiting side effects, or (4) total restriction and inability to function productively. (Doc. 12-4 at 35). Dr. Cordover chose the third option, severe and limiting side effects. (*Id.*)

When Reliance contacted Bowman's primary care physician, Dr. DeBerry, the doctor passively noted that "[i]t has been determined that [Bowman] is disabled … and in my opinion has not improved over the past 2–3 years." (*Id.* at 27). However, Dr. DeBerry explicitly "defer[red] all functional capacity evaluations and further prognosis to [Bowman's] back specialist Dr. Cordover." (*Id.*)

Finally, Reliance contacted Dr. Connolly, who had treated Bowman for idiopathic hypersomnia and obstructive sleep apnea. (*Id.* at 38). Dr. Connolly, however, did not remark on Bowman's level of disability. (*Id.*)

Although Reliance agreed that Bowman suffered injuries resulting in disability, it disagreed that Bowman could no longer work in any capacity. Thus, Reliance denied Bowman's claim for total disability and Bowman appealed. During the appeal, Reliance received a note from Dr. Cordover that, although Bowman's neck symptoms were "progressing," there was "no change in [Bowman's] restrictions or forms that [Dr. Cordover] ha[d] filled out previously." (*Id.* at 31). Dr. Cordover noted that a functional capacity evaluation could "further define" Bowman's capabilities, although no such evaluation ever occurred. (*Id.*)

At this point, Reliance obtained advice from two independent medical examiners: Dr. Denver and Dr. Goldstein.

Dr. Denver reviewed Bowman's medical history for an hour before conducting a one-hour physical examination. (Doc. 12-3 at 41). At the conclusion of

3

the examination, Dr. Denver had concluded that Bowman could work full-time with accommodations at light physical demand duty, as long as he was allowed to change positions every forty minutes. (*Id.* at 56). Dr. Denver noted that Bowman's "current medications … do not contribute to any significant limiting physical or cognitive deficits." (*Id.*) Dr. Denver also noted that Bowman "reports hydrocodone worsens insomnia and dulls his senses[,] but the documentation fails to substantiate significant impairment in cognition or physical function resulting from hydrocodone use." (*Id.*)

For his part, Dr. Goldstein performed a pulmonary evaluation. He concluded that Bowman could work if his only problems were sleep apnea, narcolepsy, and hypersomnia. (*Id.* at 26). Dr. Goldstein noted that Bowman required treatment for chronic pain and would not be able "to return to his work as [Bowman] described" i.e. his original heavy-lifting job. (*Id.*)

After reviewing all of the evidence, including Dr. Denver's and Dr. Goldstein's reports, Reliance denied Bowman's appeal. Bowman filed this action under 29 U.S. §1001 *et seq*. Then by agreement of Bowman and Reliance, the dispute over whether Reliance's decision was arbitrary and capricious was submitted

4

to the court for resolution on a jointly prepared record, without a trial, but after briefing.[1]

## DISCUSSION

The issue before the court is whether Reliance's denial of benefits was arbitrary and capricious. The court has jurisdiction to decide federal questions under 28 U.S.C. §1331, including review of ERISA benefits decisions. 29 U.S.C. §1132(e). The Supreme Court has recognized that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under the arbitrary and capricious standard, the court owes deference to "the administrator's plan interpretations and … factual determinations." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 n.6 (11th Cir. 2011). When reviewing ERISA benefits decisions, the court follows a six-step framework:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

---

[1] The court is grateful to counsel for the parties for working cooperatively to submit this matter without trial and in an expeditious manner. The Middle District of Alabama has been suffering a judicial emergency for the past several years, with only one active district judge for a three-judge court. As a result, not all cases have been addressed as swiftly as the parties, counsel, or even the court would prefer, including this one.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

The arbitrary and capricious "standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (quoting *Firestone*, 489 U.S. at 111). If "no reasonable basis exists for the decision," then the decision is arbitrary and capricious. *Braden v. Aetna Life Ins. Co.*, 597 F. App'x 562, 565 (11th Cir. 2014) (quoting *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (internal quotation marks omitted)). However, the administrator's decision need not be the

best possible decision—only a rational one. *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

Everyone agrees that Bowman is disabled to some degree. Everyone agrees that there are certain jobs, like his previous job, that he cannot do. The dispute is whether Bowman has shown that he cannot do *any* job.

Both parties also agree that the plan grants Reliance discretionary authority in reviewing claims. (Doc. 13 at 10 n.1; Doc. 14 at 10). The plan states that Reliance "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (Doc. 12-1 at 15). Because the plan clearly grants discretionary authority, the court will forego de novo review and proceed to review Reliance's decision for reasonableness. *Till v. Lincoln Nat'l Life Ins. Co.*, 182 F. Supp. 3d 1243, 1268 (M.D. Ala. 2016), *aff'd* 678 F. App'x 805 (11th Cir. 2017).

Bowman argues that Reliance acted unreasonably in several ways. Some of the evidence he offers conflicts with other admitted evidence. Despite these conflicts, Reliance's denial was reasonable. "While an administrator may not arbitrarily ignore relevant medical evidence, it is not arbitrary and capricious to deny a disability claim 'on the basis of conflicting, reliable evidence.'" *Id.* at 1273 (quoting *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1199 (11th Cir. 2007)).

First, Bowman states that his doctors noted a "substantial and progressive decline in health." (Doc. 15 at 1). He argues, therefore, that Reliance "arbitrarily and

7

capriciously relied on a May 2009 claim form to support its contention that it had grounds to deny [his] claim in 2011...." (*Id.* at 3). On the contrary, Reliance acted rationally on the information it had, then supplemented that information with review by Dr. Denver and Dr. Goldstein. Reliance's decision—and the court's review of that decision—is focused solely on "the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989). During the May 30, 2019 on-the-record status conference, the parties acknowledged that the appropriate time to analyze Bowman's condition is when the benefits decision was made.

Second, Bowman states that he presented "significant probative evidence" of his disability from his treating physicians. (*Id.* at 2). But in this case the court operates under an arbitrary and capricious standard. Merely providing significant evidence is not enough to meet this high standard of review. Bowman needed to show that the evidence so clearly showed he could not do *any* job that Reliance's contrary decision was irrational. In short, Bowman needed to show that Reliance could not have reasonably found him capable of performing any job. Evidence short of that high hurdle does not meet Bowman's burden.

Third, Bowman claims Reliance's decision was arbitrary and capricious because Reliance allegedly did not take into account the effects of his medications. Bowman claims they "affect his ability to perform work functions, drive to and from

work, [and] to stay awake during the work day." (Doc. 13 at 12). Bowman attempts to bolster his claim by citing *Adams v. Prudential Insurance Company of America*, where the court found it arbitrary and capricious to terminate a person's benefits where the reports of the treating physicians ignored the person's medications. 280 F. Supp. 2d 731, 741 (N.D. Ohio 2003).

But here, the treating physicians did discuss the effect of Bowman's medications. Specifically, Dr. Denver noted that Bowman's current medications "do not contribute to any significant limiting physical or cognitive deficits." (Doc. 12-3 at 56). So despite Bowman's claims to the contrary, Reliance did take the effect of his medications into account. Even if the other doctors' reports found that Bowman's medications prevented him from working, Reliance acted rationally in crediting the most recent opinion, that being Dr. Denver's. *See Till*, 182 F. Supp. 3d at 1273 ("[I]t is not arbitrary and capricious to deny a disability claim 'on the basis of conflicting, reliable evidence.'"). Thus, Reliance did not act unreasonably.

As for Reliance's conflict of interest, "[a] structural conflict of interest is unremarkable in today's marketplace, and the existence of the conflict is not 'a license, in itself, for a court to enforce its own preferred de novo ruling about a benefits decision.'" *Id.* at 1277 (quoting *Blankenship*, 644 F.3d at 1356). "Where a conflict exists and a court weighs the conflict in the sixth step of the analysis, 'the burden remains on the plaintiff to show the decision was arbitrary; it is not the

9

defendant's burden to prove its decision was not tainted by self-interest.'" *Id.* at 1276 (quoting *Blankenship*, 644 F.3d at 1355). Thus, Bowman bears the burden not only to allege a conflict of interest but to show how it materially affected Reliance's decision. Instead, Bowman merely notes that Reliance is a for-profit company and that Reliance determines whether to grant or deny benefits. The court has noted that this is "unremarkable in today's marketplace…." *Id.* at 1277. Because Bowman fails to do more than point out a potential conflict of interest, this factor cannot carry much weight.

Although Bowman and Reliance differ in their interpretations of the medical evaluations, the court's inquiry is restricted to whether Reliance's interpretation was reasonable. And "it is not arbitrary and capricious to deny a disability claim 'on the basis of conflicting, reliable evidence.'" *Id.* at 1273. Because Reliance's decision was based on reliable evidence, any conflicts in the evidence are not dispositive, and the court finds that Reliance's decision was not unreasonable.

## CONCLUSION

Based on the above reasoning, the court holds that Defendant Reliance is entitled to a judgment in its favor. A final judgment will be entered separately.

**DONE** and **ORDERED** this 12th day of July 2019.

                                         /s/ Andrew L. Brasher  
                                    ANDREW L. BRASHER  
                                    UNITED STATES DISTRICT JUDGE